[No. 6,993.—In Bank.]
December 21, 1882.

## JOHN HILL *v.* P. A. FINIGAN.

PURCHASE BY PLEDGEE AT SALE—CONSENT OR RATIFICATION BY PLEDGOR.— A pledgor may consent to or ratify a purchase, at public auction, by the pledgee of the property pledged.

ID.—INSTRUCTION TO JURY.—In its instructions, the Court below, in effect, told the jury that Section 3010 of the Civil Code, which prohibits the pledgee from purchasing the property pledged, except by direct dealing with the pledgor, requires the direct dealing to precede the sale, to be something which changes the form of the original contract, and be supported by a consideration.

*Held:* In each particular the instruction is erroneous. In the first place, it entirely excludes the question of ratification; and in the second place, as the statute was intended for the protection of the pledgor, he may, at the time of the making of the pledge, or at any subsequent time, without changing the form of the original contract, and without consideration, consent that the pledgee may purchase at the sale.

ID.—INSTRUCTION TENDING TO PREJUDICE JURY.—(Per MORRISON, C. J., and ROSS and MYRICK, JJ.) The Court below also instructed the jury as follows: "The object of the law is for the purpose of guarding against the greed and rapacity of money-lenders, and those who deal in securities of this character." And again: "There are many reasons why this law is a wholesome one, independent of the rapacity and greed of creditors."

*Held:* In view of the circumstances of this case, these instructions were manifestly improper, as tending to prejudice the jury against the defendant.

APPEAL by the defendant from the judgment of the District Court of the Fifteenth Judicial District of the State of California, in and for the City and County of San Francisco, and from an order denying a motion for a new trial. DWINELLE, J.

Action for the conversion of a lot of mining stock and jewelry. The complaint of the plaintiff, filed August 8, 1878, al-

leged: That on the seventh day of August, A. D. 1878, he was
and still is the owner of, and he then was and still is entitled
to the possession of, the following-described articles of per-
sonal property, to wit: One hundred shares of the capital
stock of the Sierra Nevada Silver Mining Company; one hun-
dred shares of the capital stock of the Caledonia Silver Mining
Company; fifty shares of the capital stock of the Yellow
Jacket Silver Mining Company; fifty shares of the capital
stock of the Best and Belcher Mining Company; fifty shares
of the capital stock of the Hale and Norcross Silver Mining
Company; twenty-five shares of the capital stock of the Ken-
tuck Mining Company; two hundred shares of the capital
stock of the Consolidated Imperial Mining Company; one
hundred and fifty shares of the capital stock of the Golden
Chariot Mining Company; one gold pin, or brooch, set with
sixteen diamonds; one pair gold earrings, set with seven dia-
monds each; one gold finger-ring set with nine diamonds; one
gold cross set with twenty-six diamonds; one gold cross set
with a single diamond; that the defendant on the said seventh
day of August, 1878, was in the possession of said property;
that on the same day the plaintiff demanded of the defendant
the possession of the said property, and the restoration of the
same to him, but the defendant wrongfully and unlawfully
refused, and still does wrongfully and unlawfully refuse, to
deliver or restore the same, or any part thereof, to the plaint-
iff, and has converted the same to his own use, and still
wrongfully and unlawfully withholds and detains the same
from the plaintiff; that said property was on said seventh day
of August, 1878, of the value of $6,921.25 in gold coin. Where-
fore plaintiff demands judgment against the defendant for the
sum of $6,921.25 in gold coin, with legal interest thereon from
the seventh day of August, 1878, or in case the said property
should hereafter increase in value, then the highest market
value of said property at any time between the said seventh
day of August, 1878, and the verdict in this action without
interest, besides his costs of suit, and for such further judgment
as to this Court may seem meet.

The defendant, after denying that the plaintiff since the
thirteenth day of June, A. D. 1878, ever was the owner, or
since the fifteenth day of February, A. D. 1878, ever was en-

titled to the possession, of any part of the property described in the complaint, and that the defendant had converted the property alleged. That heretofore, and on the fifteenth day of February, 1878, at said City and County of San Francisco, said defendant, at the special instance and request of plaintiff, loaned and advanced unto said plaintiff the full sum of $3,628.50, in gold coin of the United States, and which sum plaintiff then and there undertook and promised to repay unto defendant whenever requested so to do, with interest thereon, in gold coin of the United States; and thereupon, and on said fifteenth day of February, 1878, at said city and county, plaintiff delivered to and deposited with defendant, by way of security for the payment of said sum of money so loaned unto him by defendant, all and singular the articles of personal property mentioned and described in the complaint. And said defendant then and there received said articles of personal property, and held the same by way of security for the repayment of said sum of money and interest thereon. That during the time said plaintiff held said articles of personal property prior to the sale thereof hereinafter mentioned, it became and was necessary for the protection of such security to advance and pay various sums of money, as and for assessments levied and assessed upon the shares of mining stock mentioned in complaint and pledged unto him, and said defendant did advance and pay such assessments, amounting to the sum of $300.50, in said gold coin. That thereafter, and on or about the sixth day of June, 1878, the defendant duly demanded of plaintiff the payment to him of said sum of money so loaned and advanced, and the sums of money as aforesaid paid, laid out, and expended by defendant for assessments upon said shares of mining stocks, and interest upon said sums. And plaintiff neglected and refused to pay said sums, or any part thereof, and thereupon, and on or about said sixth day of June, 1878, the defendant gave to plaintiff actual notice that thereafter and on the thirteenth day of June, 1878, at the hour of ten o'clock in the forenoon of that day, at the auction-house of Maurice Dore & Co., at No. 410 Pine street, between Montgomery and Kearny streets, in said City and County of San Francisco, he would, through H. A. Cobb, Esq., auc-

tioneer of said house, offer and sell all of said stock and property described in complaint, at public auction, for the highest obtainable price, and out of the proceeds of such sale would pay the expenses thereof, and said debt, so far as the money obtained from the sale would defray the same. That such notice of the time and place at which the property pledged would be sold was actually given to and received by plaintiff, at said city and county, at such reasonable time before the sale as would enable said pledgor, to wit, said plaintiff, to attend thereat. That thereafter and on said thirteenth day of June, 1878, the plaintiff having failed and neglected to pay said indebtedness, or any part thereof, and the same being wholly due and unpaid, and amounting on said day to the sum of $4,077.50, in gold coin of the United States, at said hour of ten o'clock in the forenoon of said day, at said auction-house of Maurice Dore & Co., said defendant, by and through said H. A. Cobb, Esq., auctioneer, offered and sold all the personal property mentioned and described in complaint and so pledged unto defendant, except as hereinafter stated; and that said sale was made by public auction in the manner and upon the notice to the public usual at the place of sale in respect to auction sales of similar property, and was for the highest obtainable price, and at such sale all said personal property described in complaint and so pledged unto defendant, except as hereinafter stated, was sold at public auction in the manner and upon the notice to the public usual at the place of sale in respect to auction sales of similar property, pursuant and according to said notice, for the highest obtainable price, to wit, the sum of $3,123.75; and that after deducting the expenses of said sale, to wit, the sum of $25, there remained of the proceeds of said sale, to be applied upon the indebtedness aforesaid the sum of $3,098.75, which was applied upon said indebtedness, leaving a balance due unto defendant from plaintiff of the sum of $978, and no part of which sum plaintiff has paid, and the same now remains due and owing unto defendant. That of said shares of stock so pledged unto defendant by plaintiff, the fifty shares of the capital stock of the Golden Chariot Mining Company mentioned in complaint had been sold for assessment prior to the delivery thereof to defendant,

and the same were of no value and were not offered for sale, and defendant still retains the same. That the sale aforesaid was in all respects fairly and legally conducted, and the prices obtained for all of the articles of personal property so sold were the highest market prices for said articles in the market at the city and county aforesaid on the day of said sale.

And said defendant, for a further and separate answer, herein alleges and shows: That heretofore, and on the fifteenth day of February, 1878, at said City and County of San Francisco, said defendant, at the special instance and request of plaintiff, loaned and advanced unto said plaintiff the full sum of $3,628.50, in gold coin of the United States, and which sum plaintiff then and there undertook and promised to repay unto defendant whenever requested so to do, with interest thereon, in gold coin of the United States; and thereupon, and on said fifteenth day of February, 1878, at said City and County, plaintiff delivered to and deposited with defendant, by way of security for the payment of said sum of money so loaned unto him by defendant, all and singular the articles of personal property mentioned and described in the complaint, and said defendant then and there received said articles of personal property, and held the same by way of security for the repayment of said sum of money and interest thereon. That during the time said plaintiff held said articles of personal property prior to the sale thereof hereinafter mentioned, it became and was necessary for the protection of such security to advance and pay various sums of money as and for assessments levied and assessed upon the shares of mining stock mentioned in complaint and pledged unto him, and said defendant did advance and pay such assessments, amounting to the sum of $300.50, in said gold coin. That thereafter, and on or about the sixth day of June, 1878, the defendant duly demanded of plaintiff the payment to him of said sum of money so loaned and advanced, and the sums of money as aforesaid paid, laid out, and expended by defendant for assessments upon said shares of mining stocks and interest upon said sums. And plaintiff neglected and refused to pay said sums or any part thereof, and thereupon, and on or about said sixth day of June, 1878, the defendant gave to plaintiff actual notice that thereafter, and on the thir-

teenth day of June, 1878, at the hour of ten o'clock in the forenoon of that day, at the auction-house of Maurice Dore & Co., at No. 410 Pine street, between Montgomery and Kearny streets, in said City and County of San Francisco, he would, through H. A. Cobb, Esq., auctioneer of said house, offer and sell all of said stock and property described in complaint, at public auction, for the highest obtainable price, and out of the proceeds of such sale would pay the expenses thereof, and said debt, so far as the money obtained from the sale would defray the same. That such notice of the time and place at which the property pledged would be sold was actually given to and received by plaintiff at said city and county at such reasonable time before the sale as would enable said pledgor, to wit, said plaintiff, to attend thereat, and thereupon said plaintiff agreed with defendant that said sale should be made at the time and place specified in said notice, and without any other or further notice to the public or to him thereof, and agreed that the sale so made should in all respects be valid and binding, and waived any other or further notice to the public or to himself thereof; and thereafter, and on said thirteenth day of June, 1878, the plaintiff having failed and neglected to pay said indebtedness or any part thereof, and the same being wholly due and unpaid and amounting on said day to the sum of $4,077.50, in gold coin of the United States, at said hour of ten o'clock in the forenoon of said day, at said auction-house of Maurice Dore & Co., said defendant, through H. A. Cobb, Esq., auctioneer, offered and sold all the personal property mentioned and described in the complaint and so pledged unto defendant, except as hereinafter stated, and that said sale was made by public auction, in the manner usual at the place of sale in respect to auction sales of similar property, and was for the highest obtainable price, and at such sale all said personal property described in complaint and so pledged unto defendant, except as hereinafter stated, was sold at public auction, in the manner usual at the place of sale in respect to auction sales of similar property, pursuant and according to said notice, for the highest obtainable price, to wit, the sum of $3,123.75, and that after deducting the expenses of sale, to wit, the sum of $25, there remained of the proceeds of said sale, to be applied upon the indebtedness aforesaid, the

sum of $3,098.75, which was applied upon said indebtedness, leaving a balance due unto defendant from plaintiff of the sum of $978, and no part of which sum plaintiff has paid, and the same now remains due and owing unto defendant. That of said shares of stock so pledged unto defendant by plaintiff, the fifty shares of the capital stock of the Golden Chariot Mining Company, mentioned in complaint, had been sold for assessment prior to the delivery thereof to defendant, and the same were of no value and were not offered for sale, and defendant still retains the same; that the sale aforesaid was in all respects fairly and legally conducted, and the prices obtained for all of the articles of personal property so sold were the highest market prices for said articles in the market at the city and county aforesaid, on the day of said sale.

And said defendant, for a further and separate answer herein, alleges and shows, that heretofore, and on the fifteenth day of February, 1878, at said City and County of San Francisco, said defendant, at the special instance and request of plaintiff, loaned and advanced unto plaintiff the full sum of $3,628.50, in gold coin of the United States, and which sum plaintiff then and there undertook and promised to repay unto defendant whenever requested so to do, with interest thereon, in gold coin of the United States; and thereupon, and on said fifteenth day of February, 1878, at said city and county, plaintiff delivered to and deposited with defendant, by way of security for the payment of said sum of money so loaned unto him by defendant, all and singular the articles of personal property mentioned and described in the complaint, and said defendant then and there received said articles of personal property and held the same by way of security for the repayment of said sum of money and interest thereon. That during the time said plaintiff held said articles of personal property prior to the sale thereof hereinafter mentioned, it became and was necessary for the protection of such security to advance and pay various sums of money as and for assessments levied and assessed upon the shares of mining stock mentioned in complaint and pledged unto him, and said defendant did advance and pay such assessments, amounting to the sum of $300.50, in said gold coin; that thereafter, and on or about the sixth day of June, 1878, the defendant duly

demanded of plaintiff the payment to him of said sum of money so loaned and advanced, and the sums of money as aforesaid paid, laid out, and expended by defendant for assessments upon said shares of mining stock and interest upon said sums; and plaintiff neglected and refused to pay said sums or any part thereof, and thereupon, and on or about said sixth day of June, 1878, the defendant gave the plaintiff actual notice that thereafter and on the thirteenth day of June, 1878, at the hour of 10 o'clock in the forenoon of that day, at the auction-house of Maurice Dore & Co., at No. 410 Pine street, between Montgomery and Kearny streets, in said City and County of San Francisco, he would, through H. A. Cobb, Esq., auctioneer of said house, offer and sell all of said stock and property described in complaint at public auction, for the highest obtainable price, and out of the proceeds of such sale would pay the expenses thereof, and said debt, so far as the money obtained from the sale would defray the same; that such notice of the time and place at which the property pledged would be sold was actually given to and received by plaintiff at said city and county, at such reasonable time before the sale as would enable said pledgor, to wit, said plaintiff, to attend thereat; and thereafter, and on said thirteenth day of June, 1878, the plaintiff having failed and neglected to pay said indebtedness or any part thereof, and the same being wholly due and unpaid and amounting on said day to the sum of $4,077.50, in gold coin of the United States, at said hour of 10 o'clock in the forenoon of said day, at said auction-house of Maurice Dore & Co., the defendant, through said H. A. Cobb, Esq., offered and sold all the personal property mentioned and described in the complaint and so pledged unto defendant, except as hereinafter stated, and that said sale was made by public auction, in the manner usual at the place of sale in respect to auction sales of similar property, and was for the highest obtainable price, and at such sale all such personal property described in complaint and so pledged unto defendant, except as hereinafter stated, was sold at public auction in the manner usual at the place of sale in respect to auction sales of similar property, pursuant and according to said notice, for the highest obtainable

price, to wit, the sum of $3,123.75; and that after deducting the expenses of said sale, to wit, the sum of $25, there remained of the proceeds of said sale, to be applied upon the indebtedness aforesaid, the sum of $3,098.75, which was applied upon said indebtedness, leaving a balance due unto defendant from plaintiff of the sum of $978, and no part of which sum plaintiff has paid, and the same now remains due and owing unto defendant; that of said shares of stock so pledged unto defendant by plaintiff, the fifty shares of the capital stock of the Golden Chariot Mining Company mentioned in complaint had been sold for assessment prior to the delivery thereof to defendant, and the same were of no value and were not offered for sale, and defendant still retains the same; that the sale aforesaid was in all respects fairly and legally conducted, and the prices obtained for all of the articles of personal property so sold were the highest market prices for said articles in the market at the City and County of San Francisco aforesaid on the day of said sale; and thereafter, plaintiff being fully informed of the facts, did fully, wholly, and entirely ratify and confirm the said sale and all of said proceedings, and did undertake and agree upon request to pay said defendant said sum of $978.75 in said gold coin, the balance of said debt so remaining due and unpaid.

And for a further and separate answer and defense, and by way of counter-claim, the defendant alleges and shows that heretofore, and on or about the thirteenth day of June, A. D. 1878, at the City and County of San Francisco, an account was stated between plaintiff and defendant, and upon such statement a balance of $978.75 in gold coin of the United States was found to be due from said plaintiff to this defendant, and plaintiff then and there promised to pay said sum, but has paid no part thereof.

Wherefore defendant demands judgment against said plaintiff for said sum of $978.75, with interest thereon from June 13, 1878, and costs of suit.

On August 1, 1879, the defendant filed a supplemental answer as follows: Now comes the above-named defendant, by leave of Court first had and obtained, and for further and additional answer to the answer heretofore filed in this cause, and not in any manner waiving any of the defenses in the

answer heretofore filed; that the plaintiff, on the first day of February, 1878, was indebted to the firm of Randolph, McIntosh & Co., stock brokers of this city, in the sum of $3,628.50 gold coin, and said Randolph, McIntosh & Co. held and had a lien upon all and singular the personal property particularly described in the complaint to secure the payment of said money due them as aforesaid, with power to sell the same or any part thereof, without making any previous demand for payment thereof, with or without notice of either time or place of sale, at any session of the San Francisco Stock and Exchange Board, or at private or public sale, whenever the market value of said property was reduced to less than twice the amount of the sums of money advanced thereon by said Randolph, McIntosh & Co., or whenever in their judgment the said property is liable to depreciate so as to make the security insufficient, or whenever they shall elect to close the account; that said loan bore interest at the rate of one and a half per cent. per month, and compounded monthly when not paid; that said Randolph, McIntosh & Co., on or about the fifteenth day of February, 1878, at the instance and request of plaintiff, sold and transferred to this defendant all their interest, rights, and privileges in and to their said claim against plaintiff, and in and to said personal property described in said complaint and their contract of security given to secure the same; that on the sixth day of June, 1878, there was due and owing to this defendant from plaintiff on the aforesaid indebtedness the sum of $4,077.50, and this defendant, prior to and on the sixth day of June, 1878, deemed that the property described in said complaint was liable to depreciate, and defendant elected to close said account of said plaintiff; that the market value of the property pledged to secure the same was then reduced to less than twice the amount advanced thereon; that this defendant, on said sixth day of June, 1878, notified said plaintiff in writing that he elected to close said account, and demanded the payment of $4,077.50 then and there due this defendant from plaintiff, and in default of payment thereof he would sell said property at auction at the auction-house of Maurice Dore & Co., No. 410 Pine street, in the city of San Francisco, on the thirteenth day of June, 1878, at ten o'clock A. M.; that

said plaintiff failed and neglected to pay said amount due, or any part thereof, and this defendant on said day, through Maurice Dore & Co., offered and sold all of said property so pledged as aforesaid, except the property hereafter stated; that said sale was made by public auction in pursuance of the calls of said notice, for the highest obtainable price, to wit, ($3,123.75) three thousand one hundred and twenty-three dollars and seventy-five cents, leaving a balance due defendant on said indebtedness of ($978) nine hundred and seventy-eight dollars, and said balance now remains due and unpaid from plaintiff to defendant. That of said property, fifty shares of the capital stock of the Golden Chariot Mining Company had been sold for assessments prior to the delivery thereof to defendant. The case was tried before a jury August 7, 1879, and a verdict was rendered in favor of the plaintiff for $29,960. Judgment was thereupon entered. Defendant moved for a new trial. The other facts are stated in the opinion of the Court.

*W. T. Wallace* and *Lloyd & Wood*, for Appellant.

The Court erred in charging the jury that at a sale of pledged property the pledgee could not purchase. (§ 3010, Civ. Code; 41 Cal. 519.) The Court erred in charging the jury that the pledgor of pledged property could not, before a sale, empower the pledgee to buy. (Civ. Code, §§ 3010, 3513.) The Court erred in charging the jury that a consideration was necessary to confirm a sale, or empower a pledgee to buy, or to waive any provision of the Code concerning the sale of pledge. The Court charged the jury in these words: " I have already held, though I think the jury were absent at the time, that the pledgee can not purchase the thing pledged except by direct dealing with the pledgor. That means by something subsequent to the sale, not sub—not subsequent to the sale—but it. must be something that changes the form of the original contract, and that it must be for a consideration." (Civ. Code, §§ 2307, 2308, 3515, 3516.) The Court erred in charging the jury that a sale of pledged property, made without an observance of the provisions of the Code, is void. The Court erred in charging the jury that a waiver of any of the requirements of the Code concerning the sale of pledged prop-

erty by the pledgor is unlawful. (Sedgwick on Statutory and Const. Law, 109; 10 N. Y. 446; 3 id. 197, 511.) The Court erred in charging the jury: "The object of the law is for the purpose of guarding against the greed and rapacity of money-loaners and those who deal in securities of this character." "There are very many reasons why this law is a wholesome one, independent of the rapacity and greed of creditors."

*Stanly, Stoney & Hayes*, for Respondent.

The familiar doctrine that persons holding fiduciary relations are incompetent to purchase the property held by them in trust, is a rule of universal application to all persons coming within the principle that no party can be permitted to purchase an interest where he has a duty to perform, inconsistent with the character of a purchaser. The rule rests upon grounds of public policy, is to be found alike in the Roman and common law, and is enforced without regard to the question of *bona fides* in the particular case. The case of pledgor and pledgee comes within the rule. The sale of the pledged property by Finigan to himself was contrary to the faith of the bailment, forbidden alike by the common law and the Civil Code of this State, and was, in the absence of an express, deliberate, clear, and intentional ratification by Hill, so null and void that it did not even amount to a conversion, except at the election of Hill, the pledgor. Failing such election (and none such was made), the possession of the stock and jewelry remaining unchanged, the bailment continued thereafter as before, until the tender on August 7th of the amount of the debt, and the demand and refusal of the return of the property pledged, which constituted the conversion on which this action is based. (Civil Code of California, § 3010; *Maryland Fire Ins. Co.* v. *Dalrymple*, 25 Md. 243, 265–7; *Baltimore Mar. Ins. Co.* v. *Same*, id. 269, 302; *Middlesex Bank* v. *Minot*, 4 Metc. 325–9; *Bank of the Old Dominion* v. *D. & P. R. R. Co.*, 8 Iowa, 280; *Bryan* v. *Baldwin*, 52 N. Y. 235; *Stokes* v. *Frazier*, 72 Ill. 432, 433; Story on Bailments, § 319; *Perkins* v. *Thompson*, 3 N. H. 145, 146; *Wright* v. *Ross*, 36 Cal. 442.)

We call the special attention of the Court to the first four of the cases above cited. A ratification of a sale impeachable

under the rule adverted to in the preceding point, can only be effected by an independent and substantive act founded on complete information, of perfect freedom of volition, not under the force, pressure, or influence of the prior transaction, not qualified with conditions, and done with the knowledge that the sale was illegal, and that the act being done will have the effect of confirming and validating what was an impeachable transaction. (*Hoffman Coal Co.* v. *Cumberland C. & I. Co.*, 16 Md. 508, 509; *Mulford* v. *Minch*, 3 Stockt. 22, 23; *Beeson* v. *Beeson*, 9 Barr. 300; *M'Cants* v. *Bee*, 1 McCord's Ch. (S. C.), 391; S. C., 16 Am. Dec. 610; *Ricketts* v. *Montgomery*, 15 Md. 52; *Boyd* v. *Hawkins*, 2 Dev. Eq. 215; *Tucker* v. *Moreland*, 10 Peters, 75, 76; *Murray* v. *Palmer*, 2 Sch. & Lef. 486; *Salmon* v. *Cutts*, 4 De G. & Sm. 132; *Waters* v. *Thorn*, 22 Beav. 559; *Molony* v. *L'Estrange*, Beatty's Ch. R. 413, 414; *Roche* v. *O'Brien*, 1 Ball & Beatty, 339; *Cockerell* v. *Cholmeley*, 1 Russ. & My. 425; Lewin on Trusts, 3d ed., 655.)

It is true that there are cases where a prompt repudiation is required, where mere silence when notice of the transaction is given is said to work a ratification, but they are not cases falling under the principle which renders the sale in the case at bar void. They are principally cases where an agent, purporting to act with a third party on behalf of his principal, does an act beyond the scope of his authority, or without authority. In such cases, when the matter is brought to the knowledge of the principal, he owes to the third party the duty of promptly repudiating the transaction. Failing to do so, he is said to have ratified the act of his agent. But it may be questioned whether this is the proper expression to use. It would seem to be more correct to say, that by his silence, when for the protection of the third party he should have spoken, he is estopped to deny the authority of the agent. Even in cases of agency, however, this rule does not obtain between the principal and his agent, as between them mere acquiescence in order to work a ratification must have continued an unreasonable length of time. (*Clarke* v. *Meigs*, 10 Bosw. 349; *Brass* v. *Worth*, 40 Barb. 654.) In the two cases in the 25th Maryland and that in 4 Metcalf, cited under our first point, nearly two years elapsed before dissent from the sale was expressed. Tested by the above rules, it will be

found that the rulings of the Court below were erroneous only in being too favorable to appellant.

Ross, J.:

There was some testimony tending to show that the plaintiff not only consented that the defendant might purchase the property at the sale, but requested him to do so, and some testimony tending to show a ratification of the sale by the defendant, if it admitted of ratification. Sections 3001 *et seq.* of the Civil Code provide for the sale of pledged property at public auction, and by Section 3010 it is declared: "A pledgee or pledge-holder can not purchase the property pledged, except by direct dealing with the pledgor."

The Court below instructed the jury: " That means by something subsequent to the sale, not sub—not subsequent to the sale, but it must be something that changes the form of the original contract, and it must be for a consideration." In effect, the Court told the jury that the " direct dealing" mentioned in the statute must precede the sale, must be something that changes the form of the original contract, and must have a consideration to support it.

In each particular the instruction is erroneous. In the first place it entirely excludes the question of ratification. There can be no doubt that a sale made by a pledgee in contravention of the provisions of the statute may be ratified by the pledgor; and it has been expressly so decided by this Court, in the case of *Child* v. *Hugg*, 41 Cal. 519. In the second place the instruction exacts proof of the elements necessary to make a new contract. Obviously, such is not the meaning of the statute. The section was undoubtedly enacted for the protection of the pledgor, to the end that no unfair advantage be taken of him. It prohibits a pledgee or pledge-holder from purchasing the property pledged, "except by direct dealing with the pledgor." By such dealing with the pledgor, the pledgee *may* purchase it. Why should it be held that by this is meant that the pledgee or pledge-holder can only purchase by taking a direct transfer from the pledgor? The statute does not say so, and the reason of the prohibition suggests the contrary. If the pledgor chooses to do so, we see no reason why he may not consent that the pledgee

may buy at the public sale. In some cases it may be to his interest that this be done. Such consent may be given either at the time of making the pledge, or at any subsequent time, without changing "the form of the original contract," and without consideration.

The Court below also erred—particularly in view of the circumstances appearing in this case—in instructing the jury as follows: "The object of the law is for the purpose of guarding against the greed and rapacity of money-lenders and those who deal in securities of this character." And again: "There are many reasons why this law is a wholesome one, independent of the rapacity and greed of creditors."

This was manifestly improper. No one can measure the extent of the influence upon the jury of such instructions coming from the Court. The defendant was entitled to a fair trial. He did not have it in the Court below, and we can not permit the judgment to stand.

Judgment and order reversed, and cause remanded for a a new trial.

MORRISON, C. J., and MYRICK, J., concurred.

SHARPSTEIN, J., concurring specially:

I concur. The instruction first referred to in the opinion of Mr. Justice Ross is, in my opinion, clearly erroneous. Upon the other questions discussed in the leading opinion, I express no opinion.

THORNTON and McKINSTRY, JJ., concurred in the judgment on the first point discussed in the opinion of Mr. Justice Ross.

McKEE, J., concurred in the judgment.